UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| KEANNA GOCHET, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br>   v.<br><br>I.C. SYSTEM INC.,<br><br>              Defendant. | Case No.: 18-cv-256<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Keanna Gochet is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely medical services.

5. Defendant I.C. System, Inc. ("ICS") is a foreign corporation with its primary offices located at 444 Highway 96 East, St. Paul, MN 55164.

6. ICS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. ICS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. ICS is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and. Wis. Admin. Code Ch. DFI-Bkg 74.

9. ICS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

10. On or about March 14, 2016, Plaintiff procured medical services from Independent Physicians of Wisconsin, LLC ("IPW").

11. The alleged debt incurred as a result of these services was a medical debt incurred for personal, household, and family purposes.

12. Plaintiff was not required to pay for the medical services at the time services were rendered. Instead, the creditor, or a billing agent, mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred . . . in exchange for medical services . . . . Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

13. On or about March 29, 2016, Plaintiff again procured medical services from IPW.

14. The alleged debt incurred as a result of these services was a medical debt incurred for personal, household, and family purposes.

15. Plaintiff was not required to pay for the medical services at the time services were rendered. Instead, the creditor, or a billing agent, mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred . . . in exchange for medical services . . . . Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

16. On or about October 5, 2016, IPW mailed Plaintiff an account statement detailing an alleged debt, allegedly owed to IPW for medical services rendered on March 14, 2016 and March 29, 2016. A copy of this account statement is attached to this complaint as <u>Exhibit A</u>.

17. <u>Exhibit A</u> contains the following:

Patient Name: KEANNA GOCHET    Account No: ▮3212    Statement Date: 10/05/16    Payment Due Upon Receipt

| Invoice Number | Date | CPT Code | Description | Amount |
|---|---|---|---|---|
| ▮2046 | | | INVOICE BALANCE: 70.68 | |
| | 03/14/16 | 99213 | OFFICE VISIT EXISTING PATIENT | 142.00 |
| | 04/20/16 | | MOLINA HEALTH PAYMENT | 0.00 |
| | 04/20/16 | | INSURANCE CONTRACTUAL ADJUSTMENT | -71.32 |
| ▮3686 | | | INVOICE BALANCE: 45.68 | |
| | 03/29/16 | 99213 | OFFICE VISIT EXISTING PATIENT | 142.00 |
| | 04/20/16 | | MOLINA HEALTH PAYMENT | 0.00 |
| | 04/20/16 | | INSURANCE CONTRACTUAL ADJUSTMENT | -71.32 |
| | 06/28/16 | | PATIENT PAYMENT | -25.00 |

AMOUNT DUE FROM PATIENT: 116.36

3

18. Exhibit A states that Plaintiff's account ending in 3212 had a total "AMOUNT DUE FROM PATIENT" of $116.36.

19. Exhibit A also states that this $116.36 balance was associated with two invoices:

   i. Invoice Number xxxx2048, in the amount of $70.68, for services performed on March 14, 2016; and

   ii. Invoice Number xxxx3686, in the amount of $45.68, for services performed on March 29, 2016.

20. Exhibit A further states that Plaintiff made a $25.00 "PATIENT PAYMENT" towards Invoice Number xxxx3686 on or about June 28, 2016.

21. On or about March 7, 2017, ICS mailed a collection letter to Plaintiff regarding an alleged debt, allegedly owed to "Medpoint Fam Care Ctr Ipw." A copy of the letter is attached to this complaint as Exhibit B.

22. Upon information and belief, the letter in Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

23. Upon information and belief, Exhibit B is a form debt collection letter used by ICS to attempt to collect the alleged debt.

24. Upon information and belief, Exhibit B was the first written communication ICS mailed to Plaintiff regarding the alleged debt referenced in Exhibit B.

25. Exhibit B contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> NOTICE
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you make a request in writing within 30 days after receiving this notice we will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit B.

26.    Exhibit B also contains the following text:

> Please see the Accounts and Balances summary on the reverse side of this letter for the Credit Reporting Status of your accounts. You have the right to inspect your credit file in accordance with federal law. I.C. System will not submit new account information to the national credit reporting agencies until the expiration of the time period described in the notice below.

Exhibit B.

27.    The reverse side of Exhibit B contains the following:

| Account | Original Balance | Current Balance | Credit Reporting Status |
|---|---|---|---|
| 3212 | 70.68 | 70.68 | Scheduled to be reported |
| 3212 | 45.68 | 45.68 | Not eligible to report |
| Total | $116.36 | $116.36 | |

Exhibit A.

28.    Exhibit B is false, deceptive, misleading, and confusing to the unsophisticated consumer.

29.    Upon information and belief, the accounts itemized in Exhibit B correspond to Invoice Nos. ending in 2048 and 3686 stated in Exhibit A.

30.    Upon information and belief, the account that Exhibit B alleges to have an "Original Balance" and "Current Balance" of $70.68 is Invoice No. xxxx2048.

31.    Upon information and belief, the account that Exhibit B alleges to have an "Original Balance" and "Current Balance" of $45.68 is Invoice No. xxxx3686.

32.    The information in Exhibit B conflicts with the information in Exhibit A; Exhibit B states that the "Original Balance" of the debt associated with Invoice No. xxxx3686 was $45.68, which would confuse and mislead the unsophisticated consumer as to whether the $25.00 payment she made on or about June 28, 2016 had been properly processed.

33.    Exhibit B is also confusing and misleading on its face.

34.    Exhibit B states that the $70.68 debt is "Scheduled to be reported," but that the $45.68 debt is "Not eligible to report."

5

35. The statement that the debt is "not eligible to report" is confusing and misleading to the unsophisticated consumer.

36. The unsophisticated consumer would have no idea why one debt was eligible for reporting but the other was not.

37. Because the $45.68 debt was associated with medical services provided approximately two weeks after the $70.68 debt, the unsophisticated consumer may understand the statement that the debt was "not eligible to report" to mean that that the debt was not eligible for reporting as of the date Exhibit B was mailed but would become eligible for reporting in approximately two weeks.

38. Alternatively, because the consumer made a partial payment towards the $45.68 debt in the amount of $25.00 on or about June 28, 2016, approximately three months after services were provided, the unsophisticated consumer may understand the statement that the $45.68 debt was "not eligible to report" to mean that the debt was not eligible for reporting as of the date Exhibit B was mailed but would become eligible for reporting in approximately three months.

39. Alternatively, because the consumer made a partial payment towards the $45.68 debt, the unsophisticated consumer may assume that the debt could not legally be reported.

40. Alternatively, because the consumer made a partial payment towards the $45.68 debt, the unsophisticated consumer may assume that reporting the debt was not consistent with ICS' policy, but that the debt could still be reported by the creditor or another third-party debt collector.

41. The unsophisticated consumer cannot be expected to keep up with constant changes to the law governing the reporting of medical debts, which has changed considerably

6

over the past year.  *See* https://www.npr.org/sections/health-shots/2017/07/11/536501809/credit-agencies-to-ease-up-on-medical-debt-reporting. (accessed February 19, 2018) ("Starting Sept. 15, the three major credit reporting agencies---Experian, Equifax and TransUnion---will set a 180-day waiting period before including medical debt on a consumer's credit report.  The six-month period is intended to ensure there's enough time to resolve disputes with insurers and delays in payment.").

42. The false, confusing and misleading representations in <u>Exhibit B</u> are material false statements.  *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

43. A collection account is a negative item that lowers a consumer's credit score and generally remains on the consumer's "credit report" for seven years.

44. Falsely claiming that information is, or is not, subject to being reported to a credit reporting agency is a tactic that preys upon the consumer's concern about his or her credit score. *See Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 748 (E.D. Mich. July 12, 2017) ("An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives.") (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir. 2015), *rev'd on other grounds*, *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)); *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process[.]").  The consumer would prioritize debts that are being reported over debts that are not.

45. Moreover, such confusing language necessarily intimidates the consumer, distracting her away from and overshadowing her statutory validation rights.  *Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009).

46. Plaintiff was confused and misled by Exhibits A and B.

47. The unsophisticated consumer would be confused and misled by Exhibits A and B.

### *The FDCPA*

48. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS

8

81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

49. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

9

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

50. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

51. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

52. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

53. 15 U.S.C. § 1692g(a)(4) states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

…

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

54. 15 U.S.C. § 1692g(b) states:

(b) Disputed debts

. . .

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

10

### The WCA

55. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

56. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

57. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

58. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

59. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

60. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and

11

Case 2:18-cv-00256-NJ   Filed 02/20/18   Page 11 of 16   Document 1

injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

61. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

62. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

63. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

64. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

65. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. <u>Exhibit B</u> is misleading and confusing to the unsophisticated consumer because it states an "Original Balance" but that "Original Balance" does not reflect the debt's actual "Original Balance."

68. <u>Exhibit B</u> is confusing, deceptive, and/or misleading to the unsophisticated consumer.

69. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

## COUNT II – FDCPA

70. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71. <u>Exhibit B</u> is misleading and confusing to the unsophisticated consumer because it states that one debt is "Scheduled to be reported" and that the other debt is "Not eligible to report" without providing any explanation of the difference between the two debts.

72. <u>Exhibit B</u> is misleading and confusing to the unsophisticated consumer because it does not clarify why the debt is not eligible for reporting, nor state whether the debt may later become eligible for reporting.

73. <u>Exhibit B</u> is confusing, deceptive, and/or misleading to the unsophisticated consumer.

74. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(b).

## COUNT III – WCA

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Defendant is a licensed Collection Agency.

77. Exhibit A misinforms the unsophisticated consumer as to her rights.

78. Defendant's conduct violates the FDCPA. Wis. Admin. Code § DFI-Bkg 74.16.

79. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

80. Plaintiff brings this action on behalf of two Classes:

81. Class I ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) where the letter stated that one portion of the debt was "scheduled to be reported" and another portion of the debt was "not eligible to report," where the letter was mailed (e) between February 20, 2017 and February 20, 2018, inclusive, (f) and was not returned by the postal service.

82. Class II ("Nationwide Class") consists of (a) all natural persons in the United States (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) where the letter stated that one portion of the debt was "scheduled to be reported" and another portion of the debt was "not eligible to report," where the letter was mailed (e) between February 20, 2017 and February 20, 2018, inclusive, (f) and was not returned by the postal service.

83. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

84. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

85. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

86. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

87. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

88. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 20, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

16